IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MASSINISSA BELKADI,

        Plaintiff,

    v.                               CIVIL NO. 1:24-cv-14
                                         (KLEEH)

C.C. Mayle, *a police officer
for the City of Morgantown*,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 36]

Pending before the Court is *Defendant's Motion for Summary Judgment* [ECF No. 36]. For the reasons discussed herein, the Motion is **GRANTED**.

### I.    PROCEDURAL HISTORY

On February 1, 2024, Plaintiff Massinissa Belkadi ("Belkadi" or "Plaintiff"), by counsel, filed a Complaint against Defendant C.C. Mayle ("Mayle" or "Defendant"), a police officer for the City of Morgantown. ECF No. 1. The Complaint alleged (1) 42 U.S.C. § 1983 Excessive Force in violation of the Fourth, Eight, and Fourteenth Amendments; (2) 42 U.S.C. § 1983 False Arrest in violation of the Fourth, Eighth, and Fourteenth Amendments; (3) 42 U.S.C. § 1983 Unlawful Search and Seizure in violation of the Fourth, Eighth, and Fourteenth Amendments, (4) 42 U.S.C. § 1983

Unlawful Detainment in violation of the Fourth, Eighth, and Fourteenth Amendments; (5) Battery; and (6) Assault. Id.

Defendant moved for partial dismissal of the Complaint on March 27, 2024 [ECF No. 3], which was granted on March 5, 2025.[1] ECF No. 21. Thus, pursuant to this Court's *Memorandum Opinion and Order Granting Defendant's Motion for Partial Dismissal* [ECF No. 3, 27], the remaining claims in Plaintiff's Complaint at this stage are: (1) Excessive Force, (2) False Arrest under the Fourth Amendment, (5) Battery, and (6) Assault under West Virginia Common Law. On August 1, 2025, Defendant Mayle filed a Motion for Summary Judgment on the remaining Counts. ECF No. 36. On August 22, 2025, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. ECF No. 41. Then on September 5, 2025, Defendant filed a Reply to Plaintiff's Response. ECF No. 46. The Motion is thus fully briefed and ripe for review.

## II.  FACTUAL BACKGROUND[2]

In the Complaint, Plaintiff alleges that on the evening of February 2, 2023, he was in downtown Morgantown, West Virginia and

---

[1] The Court granted Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint for False Arrest and Unlawful Search and Seizure because the alleged unlawful conduct is duplicative and included within Count Two. Additionally, the Court dismissed Counts I through IV to the extent the claims were brought under the Eighth and Fourteenth Amendments.

[2] The following facts are provided from Plaintiff's Complaint [ECF No. 1], Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [ECF No. 37], and the surveillance and body camera footage of the incident [ECF 36, Ex. C, E].

planned to meet up later in the night with his girlfriend.  Compl., ECF No. 1, at ¶¶ 4-5.  When the two met up, Plaintiff alleges his girlfriend was intoxicated, and while attempting to help get her back to his apartment, one of the girlfriend's friends yelled at Plaintiff and a stranger then picked up Plaintiff's girlfriend and carried her away.  Id. at ¶¶ 6-10.

Defendant Officer C.C. Mayle arrived shortly thereafter.  Id. at ¶¶ 15-16.  Prior to Mayle's arrival, security footage from a nearby Chase Bank, shows Belkadi approaching his girlfriend and her friend.  ECF No. 36, Ex. E, at 00:10-00:17.  The group then moves mostly out of shot, with only their lower halves visible, but a confrontation clearly occurs with seven passersby's eventually joining the group.  Id. at 00:18-00:43.  Next, various people, including Plaintiff, can be seen yelling, shoving, and exhibiting other aggressive behaviors.  Id. at 00:47-1:05.  Plaintiff's girlfriend appears to fall to the ground and is then helped to her feet by an unknown individual.  Id. at 1:03-1:09.  Belkadi approaches the individual, shoving multiple women out of the way to get there, and pushes the individual.  Id. at 1:09-1:13.

Around this time, a witness called 911 and requested that an officer "come to High Street in front of Chase Bank."  ECF No. 36, Ex. B, at 00:09-00:13.  The caller explained that she witnessed a man try to "take" his girlfriend by physically dragging her out of

3

a bar.  Id. at 00:29-00:54.  As Officer Mayle arrived on the scene, he turned on his body camera, and a vehicle can be seen pulling up next to him on High Street.  ECF No. 36, Ex. C, at 00:24-0029. Mayle testified that the driver of said vehicle then pointed to Plaintiff and informed Mayle that he had watched the individual punch a female in the face.[3]  ECF No. 36, Ex. D, Mayle Dep., at p. 7:2-8.  As Mayle approached the scene, his body camera recorded a visibly agitated Plaintiff who was crying and yelling "Where is she?".  ECF No. 36, Ex. C, at 00:30-00:39.

As Mayle approached Plaintiff, dispatch informed Mayle via radio call of the report that witnesses observed an incident wherein a male beat a female, and multiple witnesses saw him dragging her out of a bar into a vehicle.  Id. at 00:39-00:59. Mayle asked Plaintiff, "what's going on man?" but Plaintiff did not acknowledge Mayle and attempted to walk by him.  Id.  Then, Plaintiff alleges, Mayle physically placed his hands on Plaintiff and forced him to sit on steps outside a restaurant – detaining him.  ECF No. 1, at ¶¶ 17-18.

Furthermore, the body camera footage shows Plaintiff objecting to his detainment and repeatedly refusing to comply with Mayle's orders.  ECF No. 36, Ex. C, at 1:01-1:28.  Plaintiff exhibits signs

---

[3] While this interaction can be seen on Mayle's body camera footage, the audio is unclear. The contents of the statement made by the driver to Mayle is taken from Mayle's deposition.

of impairment and intoxication throughout the interaction including crying, yelling at Mayle and onlookers, disobeying orders, and struggling to communicate with Officer Mayle. Id. at 00:36-3:10. Additionally, Officer Mayle testified in his deposition that he "could smell the odor of intoxicating beverage coming off [Belkadi's] breath." Mayle Dep., at p. 18:5-6. At one point during the interaction, Plaintiff can be seen observing someone filming him, which causes Plaintiff to move toward the bystander in an aggressive manner. ECF No. 36, Ex. C, at 1:28-1:38. Plaintiff testified, based on his actions, it would have been reasonable for Mayle to believe Plaintiff may have used violence against the bystander. ECF No. 36, Ex. A, Belkadi Dep., at 121-122:21-5.

Plaintiff alleges Mayle then started questioning and yelling at him, he alleges Mayle accused Plaintiff of pulling his girlfriend into a car, and then Mayle informed Plaintiff he would be arrested if Plaintiff did not stop yelling at him. ECF No. 1, at ¶¶ 19-24. Plaintiff can then be seen on the body camera footage yelling at another onlooker, crying, and becoming increasingly agitated. ECF No. 36, Ex. C, at 1:55-2:11. Mayle attempted to explain to Plaintiff that he was told by dispatch that Plaintiff was observed dragging a woman into a car. Id. at 2:11-2:14. Plaintiff responded by screaming at Mayle. Id. at 2:14-2:22. Plaintiff then notices another onlooker filming and attempts to

stand up again. Id. at 2:25-2:30.

Mayle then asked Plaintiff for his ID and name, but Plaintiff refused to provide either and claimed he did not have his wallet. Id. at 2:30.  Mayle asked again; Plaintiff refused once more to provide his name. Id. at 3:00.  Mayle then told Plaintiff to stand up, and Plaintiff then provided his full name and began to reach for his wallet to get his ID.  Id. at 3:05.

When Plaintiff was ordered to stand, he remained seated and responded with "no, no, no" and "no, sir".  Id. at 3:05-3:11. Mayle told Plaintiff to stand 7 times.  Id. at 3:02-3:11.  After Plaintiff did not stand, Mayle grabbed Plaintiff and lifted him to a standing position.  Id. at 3:10.  Mayle then ordered Plaintiff to turn around and Plaintiff can be seen turning to face Mayle. Id. at 3:11-3:13; ECF No. 37, Ex. E, at 6:05.  Mayle then swung Plaintiff from a standing position which caused Plaintiff's head to strike the sidewalk.  Id. at 3:14.  Mayle testified that Plaintiff took a "bladed" stance, and grabbed Mayle's right arm, resisting his attempt to arrest Plaintiff. Mayle Dep.,at 57:24, 60:18-24.Mayle testified that he believed Plaintiff was actively resisting arrest. Id. at 60:14-15.

Mayle, along with another officer, then proceeded to handcuff Plaintiff.  ECF No. 37, Ex. C, at 3:15-3:30.  There were no additional punches, kicks, or strikes to Plaintiff.  Id. at 3:30-4:15.  Plaintiff then requested to talk to Mayle in private and

6

Mayle escorted Plaintiff towards a police vehicle and informed him that he was under arrest for disorderly conduct and public intoxication.  Id. at 4:25-5:18.

Plaintiff alleges he suffered injuries to his head and finger by way of Mayle's actions.  ECF No. 1, at ¶ 45.  Plaintiff was treated at Mon Health Medical Center for his claimed injuries and was diagnosed with a concussion and facial abrasions.  Id. at ¶¶ 46-47.  Plaintiff was charged with disorderly conduct, obstructing an officer, fleeing from an officer, public intoxication, and underage possession/consumption of alcohol.  Id. at ¶ 48.  However, all the charges were later dismissed.  Id. at ¶ 49.

### III.  LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof."  Id. at 317-18.  Summary judgment is proper "[w]here the record taken

7

as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.  DISCUSSION

In Defendant's Motion for Summary Judgment, he requests that the Court grant summary judgment on each of the remaining Counts in the Complaint.[4]  ECF No. 36.  Additionally, Defendant asserts all Counts should be dismissed as a matter of law, and Plaintiff's claims under § 1983 should be dismissed under the Doctrine of Qualified Immunity.  For the reasons stated herein, this Court agrees on all fronts and hereby **GRANTS** Defendant's Motion for Summary Judgment [ECF No. 36].

### A. Defendant's Motion for Summary Judgment is GRANTED as to Count I (Excessive Force) of Plaintiff's Complaint because Defendant is entitled to qualified immunity.

Plaintiff's claim under 42 U.S.C. § 1983 for violation of his constitutional rights by use of excessive force, fails as a matter of law because the force used was reasonable under the

---

[4] Those remaining Counts are Count I (Excessive Force), Count II (False Arrest), Count V (Battery), and Count VI (Assault).

8

circumstances. Therefore, no violation of Plaintiff's constitutional rights occurred, and the doctrine of qualified immunity precludes Plaintiff's claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with respect to Count I.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). It "may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (citation omitted). The protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted). The inquiry involves asking "whether the totality of the circumstances justified a particular sort of search or seizure." Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

The test to determine whether an officer is entitled to qualified immunity is two-fold: the Court must determine "(1)

9

whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (citation omitted).  The United States Court of Appeals for the Fourth Circuit applies a "split burden of proof for the qualified-immunity defense."  Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citation omitted). The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong."  Id.  The Court can address either prong first.  Pearson, 555 U.S. at 236.

The "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (citation omitted).  Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent.  Graham v. Conner, 490 U.S. 386, 397 (1989).

Courts analyze three factors to determine whether a police officer used excessive force, violative of the Fourth Amendment: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Pegg v. Herrnberger, 845 F.3d 112, 120 (4th Cir. 2017) (quoting Graham, 490 U.S. at 396).  The doctrine of

qualified immunity protects those police officers who could reasonably believe that their actions were lawful, in light of clearly established law at the time of the action.  Id. at 117.

Against these considerations, the court must balance "the intrusion on the individual's Fourth Amendment interests." Graham, 490 U.S. at 396.  The degree of the intrusion is "generally measured by the amount of force employed to affect the seizure." Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005).   The assessment considers "[t]he extent of the plaintiff's injuries." Id.   However, "the severity of injury resulting from the force used has always been but one consideration in determining whether force was excessive."  Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (citation and internal quotation marks omitted).

Critically, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396– 97.  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396. (citation and internal quotation marks omitted).

Defendant argues that summary judgment is appropriate because the force used did not rise to a level of violating the

Constitution and he is entitled to qualified immunity.  Reply, ECF No. 46, at 5.  Furthermore, Defendant asserts that Plaintiff cannot show a clear violation of his constitutional rights and therefore has failed to meet his burden of satisfying the first prong of Jones.  This Court addresses only the Plaintiff's burden outlined in Jones, as Plaintiff's failure to meet that threshold here is dispositive of the claim in Count I.

Here, the doctrine of qualified immunity precludes Plaintiff's claims against Defendant who was working in his capacity as a government official when the subject interaction occurred. Pearson, 555 U.S. at 231.  The uncontroverted facts, established by the surveillance and body camera footage, show Mayle could have reasonably believed his actions were consistent with the constitutional rights he is alleged to have violated.  Anderson, 483 U.S. at 638.  Therefore, Plaintiff cannot show that "it would be clear" to a reasonable officer in Mayle's position that "his conduct was unlawful" given the totality of the circumstances he confronted.  Brosseau, 543 U.S. at 199.

First, the crimes at issue were public intoxication, obstruction, and disorderly conduct.  ECF No. 37, at 14. Additionally, as Officer Mayle arrived on the scene, he was informed by dispatch that a witness had reported seeing a male assault a female and attempt to drag her out of a bar into a car. ECF No. 36, Ex. C, at 00:39-00:59.  Then, Mayle was informed by

12

the driver of a passing vehicle that he watched the Plaintiff punch a female in the face.  ECF No. 37, at 3.  Thus, Mayle could have held a reasonable belief that severe criminal activity was afoot. Pegg, 845 F.3d at 120.

Next, Mayle observed a visibly agitated, crying Plaintiff. ECF No. 36, Ex. C, at 00:30-00:39.  As detailed above, he was then informed by two independent sources that Plaintiff had recently been violent with a female.  Id. at 00:24-0029, 00:39-00:59. Additionally, Plaintiff repeatedly disobeyed lawful orders: he yelled at Officer Mayle in response to questions, he appeared physically impaired and smelled of alcohol, and on two separate occasions Plaintiff yelled at and made aggressive movements toward bystanders who were filming the interaction.  Id. at 1:01-1:38; ECF No. 37, at 3.  Based on these facts, a reasonable officer could infer that Plaintiff posed an immediate threat to the safety of the officer and others.  Pegg, 845 F.3d at 120.

Lastly, Plaintiff was told to stand seven times before Mayle assisted him to his feet.  ECF No. 36, Ex. C, at 00:30-00:39.  Once standing, Plaintiff was ordered to turn around but can be seen turning to face Officer Mayle instead.  Id. at 3:11-3:13.  This undisputed evidence provides a sufficient basis for the reasonable belief that Plaintiff was actively resisting arrest or attempting to evade.  Pegg, 845 F.3d at 120.

When the Pegg factors, representing the government's interest,

13

are balanced against the intrusion on Plaintiff's Fourth Amendment rights, the scales tip decidedly in favor of Defendant.  Plaintiff sustained a concussion, facial abrasions, and an injury to his finger.  ECF No. 1, at ¶ 45-47.  However, these injuries, and the level of force used by Officer Mayle, do not suffice to overcome the evidence which supports the objective reasonableness of Mayle's actions.  In considering the record before the Court, as well as the applicable law, summary judgment is appropriate because a reasonable officer could have thought Mayle's actions were consistent with the constitutional rights Plaintiff alleges Mayle violated.  Anderson, 483 U.S. at 638.  Therefore, Mayle is entitled to qualified immunity.

Accordingly, the security and body camera footage do not create a triable issue of fact with respect to the Excessive Force claim in Count I, and the claim in Count I fails as a matter of law. Defendants' Motion for Summary Judgment [ECF No. 36] as to Count I is **GRANTED** and Count I of Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

**B. Defendant's Motion for Summary Judgment on Count II (False Arrest) is GRANTED because the arrest was lawful.**

Plaintiff's claim under 42 U.S.C. § 1983, for violation of his constitutional rights through false arrest, fails as a matter of law because the initial detention of Plaintiff, and his eventual arrest, were lawful.  Therefore, Defendant is protected by the

qualified immunity extended to law enforcement officers on the claim in Count II.

First, where a police officer has reasonable suspicion, based on specific and articulable facts, that "criminal activity may be afoot[,]" the officer may temporarily detain an individual. Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonable suspicion standard is a less demanding standard than probable cause and is a "nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (quoting Ornelas v. United States, 517 U.S. 690, 695 (1996)).

A court analyzing the lawfulness of a Terry stop must view the "cumulative information available" to the officer. Ornelas, 517 U.S. at 695-96. Therefore, a stop should not be deemed "unjustified based merely on a 'piecemeal refutation of each individual' fact and inference[.]" Branch, 537 F.3d at 337. Furthermore, an "officer's decision to stop and detain an individual must be evaluated objectively." Id.

In addition, "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). Probable cause exists when there is enough evidence to "warrant a man of reasonable caution" to believe an offense has been

15

committed.  Wong Sun v. United States, 371 U.S. 471, 479 (1963).

Plaintiff asserts that Mayle violated his Fourth Amendment constitutional rights because Plaintiff's arrest was unlawful, "as the defendant could not have believed that he had legal authority to arrest the plaintiff[.]" Compl., ECF No. 1, at ¶ 65.  Defendant contends that summary judgment is appropriate because his initial detention of Plaintiff was supported by reasonable, articulable suspicion, and the subsequent arrest of Plaintiff was supported by probable cause.  Def. S.J. Memo., ECF No. 37.  This Court agrees with Defendant.

Here, Officer Mayle's initial detention of Plaintiff was lawful because it was supported by reasonable suspicion of criminal wrongdoing.  The information that 911 dispatch, and the witness on the scene provided Mayle, along with Plaintiff's visible impairment and agitated state, indisputably provide the specific and articulable facts to support reasonable suspicion of criminal activity.  Terry, 392 U.S. at 30.  Likewise, the record establishes probable cause existed for Mayle's arrest of Plaintiff.  The information available to Mayle about the alleged incident, Plaintiff's condition, and his refusal to comply with lawful orders, are together sufficient to "warrant a reasonable man of reasonable caution" to believe an offense had been committed.  Wong Sun, 371 U.S. at 479.

Accordingly, Plaintiff's claim for false arrest fails as a matter of law because both the Officer's initial detention, and arrest of Plaintiff, were lawful.   Defendants' Motion for Summary Judgment [ECF No. 36] as to Count II is **GRANTED** and Count II of Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

**C. Defendant's Motion for Summary Judgment on Count V (Battery) is GRANTED because he is entitled to immunity from the battery claim under West Virginia state law.**

Plaintiff's claim under West Virginia state law for battery fails as a matter of law because legal justification existed for Officer Mayle's physical contact with the Plaintiff.   In West Virginia, a person is liable for battery if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "a harmful contact with the person of the other directly or indirectly results."   W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004).

However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."   Graham, 490 U.S. at 396.   Generally, a law enforcement officer "engaged in an arrest is afforded a privilege that precludes a battery claim." Weigle v. Pifer, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (citation omitted).   Under West Virginia state law:

> (b) An employee of a political subdivision is

17

immune from liability unless one of the following applies:

(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(3) Liability is expressly imposed upon the employee by a provision of this code.

Id. at 775-76 (citing W. Va. Code § 29-12A-5(b)).  Additionally, police officers "performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights[.]" Syl. Pt. 4, City of Saint Albans v. Botkins, 228 W. Va. 393 (2011). Therefore, "[West Virginia's] approach to matters concerning immunity historically has followed federal law." Id. at 398.

In light of the Court's preceding findings that the Defendant is entitled to qualified immunity from the § 1983 claims because the arrest of Plaintiff was lawful, and the force used to affect the arrest was reasonable, this Court finds the Plaintiff's claim for Battery must also fail as a matter of law.  Additionally, nothing in the record indicates that Mayle should not be afforded a privilege precluding a battery claim under State law.  Mayle was working as an employee of a political subdivision, his acts were within the scope of his employment, and there is no evidence his

18

acts were done with "malicious purpose, in bad faith, or in a wanton or reckless manner."  W. Va. Code § 29-12A-5(b).

Accordingly, Defendant is entitled to immunity from Plaintiff's battery claim and that claim fails as a matter of law. Therefore, Defendants' Motion for Summary Judgment [ECF No. 36] as to Count V is **GRANTED** and Count V of Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

### D. Defendant's Motion for Summary Judgment on Count VI (Assault) is GRANTED because Plaintiff is entitled to immunity from the Assault claim under West Virginia state law.

In West Virginia, a person is liable for assault if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "the other is thereby put in such imminent apprehension."  Stanley, 602 S.E.2d at 495.  However, as discussed above, an officer's right to conduct a lawful arrest must coincide with his right to use physical force or to threaten the use of such force.  Graham, 490 U.S. at 396.

Here, Mayle was acting within the scope of his employment and no exception under West Virginia Code § 29-12A-5(b) applies. Accordingly, Defendant is entitled to immunity under that section on Plaintiff's assault claim, and Plaintiff's claim for assault fails as a matter of law.  Defendants' Motion for Summary Judgment [ECF No. 36] as to Count VI is **GRANTED** and Count VI of Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

19

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 36] is **GRANTED** as to Plaintiff's claims under § 1983 (Count I and Count II) and under West Virginia state law (Count V and Count VI).  Counts I, II, V, and VI of Plaintiff's Complaint [ECF No. 1] are hereby **DISMISSED WITH PREJUDICE.**  As these were the only remaining claims against sole Defendant Officer Mayle, this action is **DISMISSED WITH PREJUDICE** and shall be **STRICKEN** from the Court's active docket. Any remaining pending motions in this action shall be **TERMINATED.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  March 31, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

20